KEVIN A. BROWN,

              Petitioner,

    v.

JIM ROBINSON,

              Respondent.

No. 2:20-cv-0991 KJM DB P

<u>FINDINGS AND RECOMMENDATIONS</u>

       Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his convictions and sentence imposed by the Sacramento County Superior Court in 2016 for sex crimes and robbery. Petitioner alleges violations of his right to due process and his Sixth Amendment right to counsel. For the reasons set forth below, this court will recommend the petition be denied.

## BACKGROUND

### I. Facts Established at Trial

       The California Court of Appeal for the Third Appellate District provided the following factual summary:

#### *Prosecution Evidence*

> More than 20 years prior to trial, defendant married his wife, the victim's daughter. In 1995, the victim purchased an apartment building in Louisiana where she lived in the front apartment. Defendant, his wife, and their son lived together in the back apartment. The victim had defendant cut a hole in the closet so that she could go back and forth between the apartments "to do laundry and whatever she needs to do."

1

One day, defendant asked the victim to come and see something in the closet. At the closet, defendant tried to shove the victim inside. Defendant's brother-in-law, the victim's son, happened to be present and intervened.

On another occasion, the victim woke up to see defendant standing over her with a knife in his hand. As the victim said defendant's name, he put his hand over her mouth. Defendant's wife and brother-in-law ran into the victim's apartment. As defendant's wife attempted to take the knife from defendant, the victim was cut on her hand. The cut was deep enough to leave a scar. Defendant's wife and brother-in-law and defendant kept "tussling with the knife" until the blade broke from the handle.

The victim testified she had known defendant to use crack cocaine in Louisiana. During both assaults, defendant seemed like a different person and behaved erratically. About defendant, the victim testified that "he's a pretty decent person other than when he's under the influence."

As a result of the damage caused by Hurricane Katrina in 2005, the victim and her family – including defendant and his wife – moved to Sacramento to be near other family members. In 2012, defendant, his wife, and their son moved in with the victim at her residence in Sacramento.

On January 11, 2013, the victim came home from work around 5:30 p.m. As she walked inside, defendant surprised her and began punching her in the face. The victim attempted to fight back. Defendant put her into a chokehold and told her he was going to kill her if she did not stop fighting. Defendant choked the victim until she urinated on herself and lost consciousness. When the victim regained consciousness, she was lying on the floor with her arms tied behind her back and her legs taped up. Defendant put duct tape over the victim's mouth.

Defendant asked for and received the victim's bank card and PIN. Defendant said the PIN "better be right" or he would "come back and get [her]." The victim scooted toward the kitchen to try to find something to help free herself.

Defendant returned within 15 minutes and found the victim in the kitchen. Even with duct tape over her mouth, the victim believed defendant understood what she was saying. Defendant dragged her back into the living room and tied her more tightly with a vacuum cleaner cord. Defendant paced for a few minutes before dragging the victim into a small bedroom. The windows were closed and there was no ventilation.

The victim asked defendant what he was doing. Defendant responded, "Shut up." Defendant smoked crack cocaine from a pipe for about 10 minutes. Defendant was so close to the victim she "inhaled whatever it was he was smoking." Defendant then pulled down the victim's pants. The victim told him, "Kevin, you don't want to do that."

Defendant used a telephone to call someone to tell the call recipient to "bring him some more." Defendant stepped outside and spoke with someone. After about 5 to 10 minutes, defendant returned. Defendant resumed smoking. The victim was lying on the bed with her pants pulled down.

Defendant took off his clothes and inserted his penis into the victim's vagina. He then inserted his penis into her anus. Defendant was smoking while he inserted his penis into her anus for the first time. "After a while, when he ... couldn't get an erection, he stopp[ed] and started smoking" again. At some point, defendant licked her breast.

The victim testified defendant inserted his penis into her anus during three "different separate occasions." Between the second and third occasion, defendant "[j]ust smoked." Although defendant never achieved a full erection, the victim said he was most erect during the third insertion into her anus. After the third attempt, defendant appeared to get tired, got up, and began pacing again. The victim estimated the assault ended at 1:30 a.m.

The victim did not consent to sex or smoke crack cocaine with defendant.

Defendant freed the victim and then drove off in her vehicle. The victim informed defendant's wife of the assault and left the house. Defendant's wife called the police and the victim went to the Sutter Medical Center.

The victim was examined by physician's assistant Jennifer Joses around 5:00 a.m. on January 12, 2013. The victim reported she had not had consensual sexual intercourse within the previous 5 days, had not consumed alcohol within the previous 12 hours, and had not used drugs within the previous 96 hours. The victim's right eye showed a ruptured blood vessel consistent with receiving a direct blow or being choked. The victim had multiple bruises on her neck, right knee, and right arm. Joses did not observe any signs the victim was under the influence of cocaine.

The victim was bleeding at the opening of her cervix. She also had abrasions at the anal fold that were consistent with sexual assaults such as anal penetration. Joses collected several biological samples from the victim, including a urine sample and the victim's underwear.

At 11:00 a.m., defendant called his wife and said he was in Los Angeles. Defendant's wife testified that "he don't know what happened. All he knows is he was driving and when he really woke up, he was in LA. That's what he said." Defendant's wife arranged a three-way conference call including defendant, herself, and City of Sacramento Police Detective Newby. During the call, which was played for the jury, defendant stated he borrowed the victim's car. He admitted taking the victim's ATM card and money. He remembered driving to Los Angeles but not assaulting the victim. Defendant admitted he had ingested "drugs." He denied having sex with the victim or tying her up.

3

Defendant's wife testified she had never known the victim to ingest crack cocaine. Although defendant's wife had observed others to be under the influence of crack cocaine, she did not see any such signs in the victim after the assault.

Later, after defendant was taken into custody, he was interviewed by City of Sacramento Police Detective Terri Castiglia. During the interview, defendant acknowledged taking the victim's car and money from her bank account. Defendant admitted he had smoked crack cocaine on the day of the incident. Defendant stated he could not remember what had happened when the victim arrived home from work that day. Defendant noted his DNA had been collected and "if it matched up whatever they said I done, I must have done it."

Criminalist Sarah Porter testified as an expert witness in forensic examination of body fluids and tissues for controlled substances, including cocaine and cocaine metabolite. Porter's testing of the victim's urine sample revealed the presence of benzoylecgonine, a cocaine metabolite. Porter stated that "there are cases where people may come in contact with cocaine passively, such that they then have the cocaine or cocaine metabolite in their system as a result." Second-hand smoke from a crack cocaine user can cause the passive exposure. Porter described studies in which exposure to second-hand smoke or vaporized cocaine produced positive urine results. However, Porter did not opine about how the victim might have ingested or been exposed to cocaine.

Forensic testing matched defendant's DNA with a DNA profile on swabs taken from the victims' breast and rectal swabs.

### *Defense*

During closing arguments, defendant's trial attorney argued the evidence was insufficient to convict defendant. Defense counsel argued the evidence showed the victim had smoked cocaine and the injuries she sustained "were more visible than they look." The defense theory was that the victim had smoked cocaine with defendant and then lied about it and the sexual assault.

People v. Brown, No. C081100, 2019 WL 2314592, at ** 1-3 (Cal. Ct. App. May 31, 2019) (ECF No. 20-8 at 2-7[1]).

---

[1] Respondent lodged portions of the state court record. (See ECF No. 20.) The Clerk's Transcript is lodged at ECF Nos. 20-1 and 20-2. The Record of Transcript is ECF Nos. 20-3 and 20-4. The briefs and opinions on appeal are ECF Nos. 20-5 to 20-10. The state habeas petitions and opinions are ECF Nos. 20-11 to 20-16. This court cites to the electronic filing pagination rather than the pagination of the original documents. With respect to the opinion of the Court of Appeal, that court modified one section of its opinion on rehearing. See 2019 WL 2314592 (Cal. Ct. Ap. June 20, 2019). The Westlaw version of the opinion contains that modification. However, the version of the opinion lodged with the court does not. This court cites to the lodged version of the appellate court's opinion and cites to the Westlaw version only with respect to petitioner's arguments regarding the amended section.

## II. Procedural Background

### A. Judgment and Sentencing

A jury convicted defendant of committing the following offenses against the victim: three counts of forcible sodomy (Cal. Penal Code § 286(c)(2); Counts 1-3); rape (Penal Code § 261(a)(2); Count 4); sexual assault (Penal Code § 243.4(a); Count 5); false imprisonment (Penal Code § 236; Count 6), robbery (Penal Code § 211; Count 7), and unlawfully taking a vehicle (Veh. Code, § 10851(a); Count 8). The jury also found true the allegations that defendant bound the victim during the rape and sodomies in violation of Penal Code § 667.61(e)(5), which imposed a minimum fifteen-year sentence. The trial court sentenced defendant to serve a state prison term of 66 years to life.

### B. State Appeal and Federal Proceedings

The California Court of Appeal affirmed the judgment and sentence in a reasoned opinion. (ECF No. 20-8.) The California Supreme Court denied the petition for review without comment. (ECF No. 20-10). Petitioner then filed habeas petitions in the state superior, appellate and supreme courts. (ECF Nos. 20-11, 20-13, and 20-15.) The superior court issued a reasoned order. (ECF No. 20-12.) The appellate and supreme courts denied the habeas petitions without comment. (ECF Nos. 20-14 and 20-16.)

Petitioner originally filed a petition in this court in 2017. Brown v. Arnold, 2:17-cv-1344 TLN DB P. Because petitioner's state court appeal was pending at that time, the court abstained from considering the petition and dismissed it without prejudice.

Petitioner filed the present petition for a writ of habeas corpus on May 15, 2020. (ECF No. 1.) Respondent filed an answer (ECF No. 24) and petitioner filed a reply (ECF Nos. 27, 28).

### STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

5

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 64. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'"  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2).  Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012).  He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way."  Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), abrogated by Murray v. Schriro, 745 F.3d 999-1000 (9th Cir. 2014)[2]); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes

---

[2] In Kipp v. Davis, 971 F.3d 939, 953 n.13 (9th Cir. 2020), the Court of Appeals explained the effect of the decision in Murray on Taylor:

> In Murray I, we recognized that Pinholster foreclosed Taylor's suggestion that an extrinsic challenge, based on evidence presented for the first time in federal court, may occur once the state court's factual findings survive any intrinsic challenge under section 2254(d)(2). Murray I, 745 F.3d at 999–1000. Kipp does not present an extrinsic challenge so Murray I's abrogation of Taylor on this ground is irrelevant here.

Similarly, in the present case, there is no extrinsic challenge based on evidence presented for the first time in federal court, so Murray's limitation of Taylor is not relevant.

7

factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013).

8

When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

If a petitioner overcomes one of the hurdles posed by section 2254(d), the federal court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

## ANALYSIS

Petitioner raises numerous claims, some of which overlap. As best this court can tell, petitioner's claims are: (1) there was insufficient evidence at the preliminary hearing to support holding petitioner over for trial on all charges; (2) counsel was ineffective at the preliminary hearing for failing to object to the unsupported charges; (3) petitioner did not have fair notice of the evidence presented at trial; (4) there was insufficient evidence to support the jury's finding that counts 1 through 5 were separate incidents resulting in consecutive sentences; (5) petitioner was subjected to double jeopardy on the three counts of forcible sodomy (counts 1-3); (6) there was insufficient evidence to support claims 3 and 4; (7) the trial court erred in admitting evidence of prior uncharged crimes; (8) trial counsel was ineffective for failing to object to expert testimony regarding passive inhalation of crack cocaine; (9) petitioner was denied the right to represent himself on the motion for a new trial; (10) the state courts violated his due process rights by refusing to hear claims on procedural grounds; and (11) appellate counsel was ineffective for failing to raise claims on appeal.

Because petitioner is pro se and this court liberally construes his pleadings, in addition to considering the arguments petitioner makes in federal petition, this court has also considered the arguments made in petitioner's briefs on appeal and in his state habeas petitions.

Initially, this court notes that respondent objects to some claims on the basis that they are unexhausted and/or procedurally defaulted. (See ECF No. 24 at 11-13.) Because this court finds it more efficient to address these claims on their merits, the undersigned does not address the exhaustion and procedural default issues in any detail. See 28 U.S.C. § 2254(b)(1) (The federal court may not grant a habeas petition based on an unexhausted claim.); Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."); see also Ayala v. Chappell, 829 F.3d 1081, 1096 (9th Cir. 2016) (same; citing Franklin, 290 F.3d at 1232).

## I. Claims re Preliminary Hearing

Petitioner makes several arguments regarding the preliminary hearing. He alleges there was insufficient evidence to support the five sex crime charges (counts 1-5) and that his attorney was ineffective for failing to object to the unsupported charges. (ECF No. 1 at 10-14, 31-35.) He further alleges that the evidence presented at the preliminary hearing did not give him fair notice of the charges brought at trial or the evidence presented at trial. (ECF No. 1 at 15, 32.)

### A. Claims re Sufficiency of the Evidence at Preliminary Hearing

#### 1. Decision of the State Court

Petitioner's first two claims were raised in his state habeas petitions and addressed by the Superior Court.[3] Because the Court of Appeal and the California Supreme Court issued silent

---

[3] The Superior Court noted that petitioner raised four additional issues, but did not identify those issues. As best this court can tell from its review of the state court habeas petition, they are: (1) there was insufficient evidence at the preliminary hearing to support the prosecutor's amendment of one count of sodomy (ECF No. 20-11 at 50-52); (2) the "multiplicity" of counts 1-5 violated petitioner's right to be free of double jeopardy (ECF No. 20-11 at 75, 63); (3) the consecutive sentences violated due process (ECF No. 20-11 at 60, 115); and (4) the preliminary hearing did not provide notice of the charges and/or the evidence adduced at trial. The Superior Court

opinions, the Superior Court's opinion is the last reasoned opinion of a state court. The Superior

Court held:

> Petitioner's primary contention is that insufficient evidence was
> presented at the preliminary hearing to justify a holding order on
> Counts 1-5 or under Penal Code § 667.61. He claims that the crimes
> were not separate and that his public defender should have objected
> to evidence at the preliminary hearing or should have filed a 995
> motion.
>
> When the evidence produced at trial supports a conviction, the
> question of whether evidence at the preliminary hearing supported
> probable cause is moot. (*People v. Hampton* (1981) 116 Cal.App.3d
> 193, 199.) Similarly, inadequate assistance of counsel at a
> preliminary hearing cannot be shown unless the defendant can show
> that counsel's error resulted in an unfair trial. (*People v. Coleman*
> (1988) 46 Cal. 3d 749, 773.)
>
> Petitioner's claims about the inadequacy of evidence at his
> preliminary hearing cannot succeed. At preliminary hearing, the
> evidence had to be sufficient to show only that there was probable
> cause to believe that petitioner had committed the crimes charged.
> At trial, the evidence had to be sufficient beyond a reasonable doubt
> to show the same. Because petitioner went to trial and was convicted,
> he has no claim regarding the earlier proceeding. If he thinks that
> the evidence at trial was insufficient, that claim may be made on
> appeal. The same is true of counsel's representation. Unless
> petitioner can show that counsel's representation during preliminary
> hearing resulted in an unfair trial – a claim that cannot be sustained
> based on insufficiency of the evidence – he cannot show ineffective
> representation regarding the earlier proceeding.

(ECF No. 20-12 at 1.)

### 2. Analysis

The state court relied on only state law for its decision. When a state court decision

rejects some of a petitioner's claims but does not expressly address a federal claim, a federal

habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

merits.[4] <u>Johnson</u>, 568 U.S. at 292. For unexplained state court decisions, this court "must

determine what arguments or theories . . . could have supported, the state court's" rejection of the

claim "and then it must ask whether it is possible fairminded jurists could disagree that those

---

refused to consider these issues because they should have been, or were, raised on appeal. (ECF
No. 20-12 at 2.)

[4] Because petitioner was pro per at the time he filed the habeas petition in state court, and because
the court liberally construes prisoners' pro se filings, this court will assume for purposes of this
analysis that petitioner raised a federal law basis for his claims based on the preliminary hearing.

11

1  arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme]

2  Court." Richter, 562 U.S. at 102. Here, the state and federal case law are essentially the same.

3  Errors at a preliminary hearing provide no grounds for relief and do not present a federal

4  constitutional claim cognizable in a § 2254 action.

5          [E]rrors at a preliminary hearing cannot support federal habeas relief
         because they do not affect the constitutionality of the conviction. At

6        most, defects at a preliminary hearing affect the validity of the
         probable cause determination. A probable cause determination,

7        however, is not a constitutional prerequisite to a charging decision.
         Gerstein v. Pugh, 420 U.S. 103, 125 n.26 (1975); see also Howard v.

8        Cupp, 747 F.2d 510, 510 (9th Cir. 1984) (well settled that there is no
         fundamental right to a preliminary hearing), cert. denied, 471 U.S.

9        1021 (1985). Accordingly, a conviction will not be vacated on the
         ground that the defendant was detained pending trial without a

10       determination of probable cause, Gerstein, 420 U.S. at 119, or on the
         ground that the probable cause determination was faulty, Viltz v.

11       McEwen, 2013 U.S. Dist. LEXIS 153714 at *38-39 (S.D. Cal. 2013)
         (collecting cases). Issues pertaining to the sufficiency, credibility,

12       and admissibility of testimony at a preliminary hearing simply

13        provide no basis for habeas relief, even without reference to
         AEDPA[5] standards. See Gilmore v. California, 364 F.2d 916, 918 n.

14       5 (9th Cir. 1966). In short, once a jury returns a guilty verdict, the
         validity of the conviction turns on the constitutionality of the trial—

15       any errors at the preliminary hearing are moot.

16  Blair v. Price, No. 2:16-cv-0132 JAM AC, 2020 WL 3574269, at *12 (E.D. Cal. July 1, 2020),

17  rep. and reco. adopted, 2020 WL 7240582 (E.D. Cal. Dec. 9, 2020).

18          This reasoning applies equally to petitioner's claim that his attorney was ineffective at the

19  preliminary hearing because they failed to object to the sufficiency of the evidence. The test for

20  an ineffective assistance of counsel claim is whether counsel's conduct was unreasonable and, if

21  it was, whether there is a reasonable probability the result of the trial would have been different

22  had counsel acted reasonably. Strickland v. Washington, 466 U.S. 668, 687 (1984). The result of

23  trial was based on the evidence presented to the jury at trial, not the evidence introduced at the

24  preliminary hearing.[6]

_____

25  [5] In 1996, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") became effective. It

26  substantially amended the federal habeas statutes.

27  [6] To the extent petitioner is also making a claim that his trial attorney was ineffective for failing to
   object to the insufficiency of the evidence at the preliminary hearing to support all charges (see

28  reply, ECF No. 27 at 115-137), not just charges 1-5, such a claim should not succeed because

Petitioner has no constitutional basis for his claims that the evidence at the preliminary hearing was insufficient to support the separate charges in counts 1-5. Those claims should be denied.

**B. Claim that Preliminary Hearing did not Provide Fair Notice**

Petitioner's third claim regarding the preliminary hearing is that the evidence presented did not give petitioner fair notice of the charges and evidence brought at trial. It appears that petitioner raised this claim in his state habeas petitions and the superior court found it procedurally barred because it should have been raised on appeal. (See ECF No. 20-12 at 2.) This court need not address the procedural bar issue because petitioner's claim is baseless on its merits.

Petitioner cites various state laws in support of this argument. (See ECF No. 1 at 32-33.) However, he cites no federal law basis for this claim. Further, the amended complaint for the preliminary hearing was the same document with the same charges as the information for trial. (ECF No. 20-1 at 45-49.) Therefore, petitioner had notice of the charges pursued at trial. To the extent petitioner is arguing that the preliminary hearing did not give him notice of the evidence presented at trial, there is no such constitutional requirement. See United States v. Agurs, 427 U.S. 97, 112 n. 20 (1976) ("[I]t has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge."); Smith v. McDaniel, No. 3:06-cv-0087-ECR VPC, 2009 WL 2152325, at *26 (D. Nev. July 10, 2009) ("It is long-established law that a defendant does not have a general constitutional right to notice of

_____

petitioner cannot show prejudice. See Gabay v. Woodford, 418 F. App'x 649, 651 (9th Cir. 2011) ("Trial counsel's failure to seek dismissal of the charges was also non-prejudicial because the charges would have been simply re-filed." (citing Cal. Penal Code § 999).) Further, this court will not second-guess the determination of the judge at the preliminary hearing that sufficient evidence supported all charges because petitioner fails to show that "no rational trier of fact" could have come to that conclusion. Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam); see also Richter, 562 U.S. at 103 (habeas claim may be granted only where state court decision is so unreasonable that no fairminded jurist could have so held). Finally, any claim challenging the sufficiency of the evidence for all charges is procedurally defective because it is unexhausted and also because, as far as this court can tell, it was raised for the first time in petitioner's reply. See 28 U.S.C. § 2254(b)(1); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (reply is not proper pleading to raise additional grounds for relief or amend petition).

13

the evidence that the State will use against him." (citing <u>Gray v. Netherland</u>, 518 U.S. 152, 167-68 (1996).), <u>aff'd</u>, 467 F. App'x 703 (9th Cir. 2012). Petitioner's claim that the preliminary hearing did not provide him notice of the charges and/or the evidence at trial should be denied.

**II. Duplicative Verdicts**

Petitioner argues that the evidence did not show that each charge was a distinct crime. He contends: (1) there was insufficient evidence to support the jury's finding that counts 1 through 5 were separate incidents and should not have resulted in consecutive sentences;[7] and (2) that the convictions and sentences for the three sodomy counts amounted to Double Jeopardy. (ECF No. 1 at 22, 33, 36; ECF No. 20-5 at 51-59.)

There is one reasoned decision from a state court, the Court of Appeal, which addresses the first issued raised. It should be noted that the argument raised in state court involved the imposition of consecutive sentences on the first four counts – the convictions for three counts of sodomy and one of rape. Petitioner's indication that the sentence on count five, sexual battery, was consecutive to the first four is incorrect. (<u>See</u> ECF No. 20-4 at 489-499.)

**A. Insufficient Evidence of Separate Incidents for Sentencing**

The Court of Appeal considered petitioner's claim that consecutive sentences for the rape and first act of sodomy violated his due process rights because the evidence did not show the crimes occurred on separate occasions.

> Defendant argues the trial court erred in imposing consecutive sentences for the rape and first act of sodomy against the victim. Defendant asserts the evidence does not support a finding the two incidents were separate offenses under section 667.6, subdivision (d). We disagree.

---

[7] In his reply brief, citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), petitioner contends his rights were violated by the determination by the trial judge, rather than a jury, that counts 1 through 5 were separate incidents for purposes of imposing consecutive sentences. While an issue raised for the first time in petitioner's reply brief is neither exhausted nor properly raised here, see n.6, <u>supra</u>, this claim would also fail on its merits. The Supreme Court has held that the Sixth Amendment, as construed in <u>Apprendi</u>, and <u>Blakely v. Washington</u>, 542 U.S. 296, 301 (2004), does not inhibit states from assigning to judges, rather than juries, the findings of facts necessary to the imposition of consecutive, rather than concurrent, sentences for multiple offenses. <u>Oregon v. Ice</u>, 555 U.S. 160 (2009). As petitioner is not constitutionally entitled to have a jury find facts necessary to the imposition of a consecutive sentence, any challenge to the state court's imposition of consecutive sentences does not merit habeas relief.

Section 667.61 requires "a consecutive sentence for each offense . . . if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." (§ 667.61, subd. (i), italics added.) Subdivision (d) of section 667.6 provides: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether . . . the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

The California Supreme Court has explained that "[u]nder the broad standard established by . . . section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific duration or any change in physical location. Thus, the Court of Appeal herein cited *People v. Irvin* (1996) 43 Cal.App.4th 1063, 1071, for the principle that a finding of 'separate occasions' under . . . section 667.6 does not require a change in location or an obvious break in the perpetrator's behavior: '[A] forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter.' Similarly, the Court of Appeal in *People v. Plaza* (1995) 41 Cal.App.4th 377, 385, affirmed the trial court's finding that sexual assaults occurred on 'separate occasions' although all of the acts took place in the victim's apartment, with no break in the defendant's control over the victim. (*But see People v. Pena* (1992) 7 Cal.App.4th 1294, 1316, 9 Cal.Rptr.2d 550 [defendant's change of positions between different sexual acts was insufficient by itself to provide him with a reasonable opportunity to reflect upon his actions, 'especially where the change is accomplished within a matter of seconds"]; *People v. Corona* (1988) 206 Cal.App.3d 13, 18 [holding, after the respondent implicitly conceded the point, that the trial court erred in imposing consecutive sentences for different sexual acts when there was no cessation of sexually assaultive behavior 'between' acts].)" (*People v. Jones* (2001) 25 Cal.4th 98, 104-105.)

We deferentially review the trial court's factual finding regarding whether the sex offenses were separately committed. As this court has previously observed, "Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his [or her] assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.) Under this deferential standard of review, we conclude the trial court did not err in imposing consecutive sentences for the rape and first count of sodomy against the victim.

Defendant's four convictions for rape and sodomy arose out of his six-and-a-half hour sexual assault of his victim. The record indicates defendant had time to reflect between each of his instances of rape and sodomy. As pertinent to defendant's contention, defendant

15

inserted his penis into the victim's vagina while he was in front of her. Defendant then changed his position and moved to a position behind the victim. While he was doing this, defendant was smoking crack cocaine. Defendant had difficulty achieving an erection. He persisted until he was able to penetrate her anus with his penis. The victim's testimony indicates the amount of time defendant spent after vaginal penetration and before the sodomy when she stated, "After a while, when he . . . couldn't get an erection, he stopp[ed] and started smoking" again. This testimony indicates a substantial time lapse before the penetration for which he was convicted of sodomy and is consistent with a series of sexual assaults spanning more than six hours. Accordingly, the trial court did not err in imposing consecutive sentences.

(ECF No. 20-8 at 19-21.)

The Court of Appeal set out the state law standards for the imposition of consecutive sentences. It then considered the trial court's factual findings. The court noted that its review of those findings was highly deferential to the trial court. The Court of Appeal would only find error if "no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his [or her] assaultive behavior."

To the extent petitioner is challenging the state's court's determination of the legal standards, that claim should fail. First, as it did with respect to the prior claims, the state court considered petitioner's claim only under state law. It held that the trial court's consideration of the rape and first incident of sodomy as separate incidents for sentencing purposes did not violate the state statutory standard for imposing consecutive sentences. That state-law holding is consistent with petitioner's briefs on appeal. On appeal, petitioner argued only that the consecutive sentences violated state law. [8] (See ECF No. 20-5 at 53-58.) There is no mention of a federal law violation.

Even if this court assumes petitioner properly raised a federal due process claim that the Court of Appeal misinterpreted the legal standards, that claim would fail on the merits. The

---

[8] Because petitioner was represented by counsel on appeal, this court need not assume, as it did with respect to the prior claims, that petitioner raised a federal law argument in his consecutive sentences claim. To the extent petitioner may have raised a federal basis for the claim in his petition to the superior court, the superior court denied that claim on procedural grounds. (See ECF No. 20-12 at 2.) A federal court treats a procedural denial as a bar to federal review. See Coleman v. Thompson, 501 U.S. 722, 729 (1991). In any event, this court addresses petitioner's claim on its merits.

Court of Appeal ruled that petitioner's sentence was correct under state law. The federal court is bound by the state court's determination of its own laws. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); see also Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law"). The only exception to that rule under the Due Process Clause is the "highly unusual case in which the 'interpretation is clearly untenable and amounts to a subterfuge to avoid federal review' of a constitutional violation." Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008).

This court can find no basis to conclude that the decision of the Court of Appeal is "so inconsistent with prior case law or the statute itself as to suggest that it is merely a subterfuge" to evade federal review. See id.

Petitioner argued in his appellate briefs, and appears to argue here, that the Court of Appeal incorrectly determined the facts. Even assuming petitioner properly exhausted a federal due process challenge to the sufficiency of the evidence underlying the state court's factual findings, petitioner makes no showing that the Court of Appeals' determination of the facts was unreasonable within the meaning of 28 U.S.C. § 2254(d)(2). To satisfy § 2254(d)(2), petitioner must show that the state appellate court, "applying the normal standards of appellate review" could not reasonably conclude that the finding of the trial court was unsupported by the record. Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). To do so, he may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), abrogated on other grounds as stated in Kipp v. Davis, 971 F.3d 939, 953 n.13 (9th Cir. 2020)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.).

Because petitioner does not allege that the fact-finding process at trial was deficient, this court examines his challenge to the state court's factual findings under the "substantial evidence"

test. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). The Ninth Circuit has noted that a federal court's review of a record-based challenge, such as the challenge in this case, must be "particularly deferential" to the state court's decision. Murray v. Schriro, 745 F.3d 984, 999 (9th Cir. 2014) (citing Taylor, 366 F.3d at 1000).

During sentencing, the trial court considered whether it was required to impose consecutive sentences for the sexual assault crimes under Penal Code § 667.6. Section 667.6(d) states:

> A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions.
>
> In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions.
>
> The term shall be served consecutively to any other term of imprisonment and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison.

Applying section 667.61, the trial court imposed a fifteen-year sentence for each of the four sexual assault crimes.

The testimony regarding the number of anal penetrations, and which one could be considered the first instance of sodomy, was not entirely consistent. Several times the victim testified that petitioner penetrated her anally three times. (See ECF No. 20-3 at 232 ("Three in the butt, and one in the vagina."); at 318 ("Q. . . . So you say that he had -- he penetrated you three times in the rectum, as best as you remember, and once in the vagina? [¶] A. Yes.")

In one series of answers, the victim responded there were three, and then appeared to respond that there were four, anal penetrations:

> Q. You stated earlier that he had penetrated your anus three times, correct?
>
> A. Yes.
>
> Q. In between those times, did he get up out of the bed and walk around?
>
> A. After the second time.
>
> Q. So he tried to put it in your anus the first time, and after that he got off the bed. And another time, he had come up and put his penis in your anus?
>
> A. Yes.
>
> Q. Did that also happen between the third and fourth time?
>
> A. Yes.

(ECF No. 20-3 at 247.)

The trial court considered the testimony to show four instances of sodomy, citing the colloquy above. (See ECF No. 20-4 at 502.) It stated:

> The victim testified that the sexual assaults started when "[h]e inserted his penis in my vagina, and then after, he got behind and did my buttocks." The court deems this to be the first occasion of rape. The victim further testified, quote, "And after a while when he couldn't get an erection, he stopped and started smoking when he was still behind me, laying behind me, and then he tried again to insert in my butt."
>
> The court deems this to be the first occasion of sodomy.
>
> . . .
>
> Mr. Brown raped and sodomized the victim the first time, stopped and smoked. There was an assault -- a break in his assaultive behavior and an opportunity for him to reflect on what he was doing. During this break, he engaged in nonsexual conduct. He then put his penis in her anus. This was the second occasion.
>
> He walked out of the bedroom after the second, third and fourth time he sodomized the victim. At each point he stepped out of the bedroom. Mr. Brown had an opportunity to reflect on his behavior, but subsequently resumed his assaultive behavior in between each of these occasions.
>
> After returning each time, he put his penis inside the victim's anus,

19

stopped and smoked more crack cocaine. The victim testified that he would assault her, stop and smoke crack, and then resume his assaults.

Based upon the evidence and testimony at trial, the court finds there was a break in the assaultive behavior, that the defendant had an ample opportunity to reflect upon his actions.

Thus, based upon the testimony at trial, the court finds by a preponderance of the evidence that each of the offenses committed in Counts 1 through 4 were committed upon the same victim on four separate occasions.

(ECF No. 20-4 at 500-501, 502-503.)

Whether or not the trial court's findings that the victim was sodomized four times was reasonably supported by the record, the Court of Appeal's decision is the one this court reviews for reasonableness. The Court of Appeal cited the victim's testimony which "indicates a substantial time lapse before the penetration for which he was convicted of sodomy."

The victim testified that:

He inserted his penis in my vagina. And then after, he got behind and he did my buttocks. And after a while, when he couldn't -- get -- um, he couldn't get an erection, he stop and he started smoking when he was still behind me, laying behind me, and I inhaled whatever it was he was smoking. And then he tried again to insert in my -- in my butt.

(ECF No. 20-3 at 230.)

In determining whether the Court of Appeal's decision was an unreasonable determination of the facts, this court must consider not only whether the Court of Appeal failed to apply its standard of review – that "no reasonable trier of fact could have" could have made the trial court's findings - but also the deference due the state court's decision under §2254(d). See Hibbler, 693 F.3d at 1146 (Petitioner must show that the state appellate court, "applying the normal standards of appellate review" could not reasonably conclude that the finding of the trial court was unsupported by the record.).

In the present case, the Court of Appeal's finding that petitioner had the opportunity for reflection, as required by state statute, between the rape and the first instance of sodomy, assuming three rather than four instances, was not unreasonable in light of the evidence presented at trial. The appellate court found that after the rape, petitioner moved around to the back of the

victim and did not immediately sodomize her because he failed to immediately have an erection. Further, to the extent the Court of Appeal's agreed with the trial court's finding of four separate instances of sodomy, there was evidence, as cited by the trial court, that petitioner sodomized the victim four times. To the extent petitioner also argues that the other instances of sodomy were not separate for purposes of the sentencing statute, petitioner fails to make any showing to support such an argument and this court finds no support in the record for it. Accordingly, this court finds no due process violation in the state court's determination that, under state law, petitioner should suffer consecutive sentences on the rape and three sodomy verdicts.

To the extent petitioner argues that his trial counsel should have challenged the consecutive sentences, that claim should fail. Petitioner was not prejudiced by any error of counsel because the appellate court determined that the consecutive sentences were appropriate under state law and because this court finds no due process violation. There is no reasonable probability petitioner would have received a different sentence had counsel made those challenges.

**B. Double Jeopardy**

Petitioner challenges the consecutive sentence discussed above as violating the Double Jeopardy Clause. This challenge should also fail.

The Double Jeopardy Clause protects "an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." Burks v. United States, 437 U.S. 1, 11 (1978) (quoting Green v. United States, 355 U.S. 184, 187 (1957)). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983).

Petitioner was convicted of rape and three counts of sodomy. As discussed above, the state court did not unreasonably interpret state law or unreasonably determine the facts to impose consecutive sentences for these four crimes under California Penal Code § 667.6. Petitioner's double jeopardy claim should be denied.

////

21

## III.  Sufficiency of the Evidence for Counts 3 and 4

Petitioner argues the evidence was insufficient to support two sodomy verdicts.  The United States Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  Moreover, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  Id. (citing Renico v. Lett, 559 U.S. 766 (2010)).  The Supreme Court cautioned that "[b]ecause rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  Id.

It is not clear whether petitioner raised this claim in state court.  In any event, the claim should not succeed.  As described in the previous section, there was sufficient evidence to support verdicts for three separate instances of sodomy.

## IV.  Admission of Evidence of Prior Acts

The prosecution presented evidence at trial that when the family resided in New Orleans in 1998, petitioner assaulted the victim and, at another time, threatened her.  In the first instance, petitioner attempted to shove the victim into a closet.  In the second, the victim woke up to see petitioner standing over her with a knife in his hand.  He covered her mouth with his hand.  Petitioner's wife entered the victim's apartment.  As petitioner's wife attempted to take the knife from petitioner, the victim was cut on her hand.  (See ECF No. 20-3 at 202-222.)

Petitioner argues that the evidence was not admissible under state law and was unduly prejudicial in violation of his right to due process.  In addition, petitioner argues that his trial counsel was constitutionally ineffective for failing to challenge admission of the evidence.  (ECF

No. 1 at 24, 38; ECF No. 20-5 at 20-34.)

### A.  Legal Standards for Review of State Court Evidentiary Rulings

It is well established that "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Thus, whether a petitioner's "due process rights were violated by the admission of evidence . . . . is [usually] no part of a federal court's habeas review of a state conviction." Id.; see also Rhoades v. Henry, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief.").

Nonetheless, courts have held that errors of state evidentiary law may violate due process where "the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); accord Gonzalez v. Knowles, 515 F.3d 1006, 1011 (9th Cir. 2008).  In the context of review under 28 U.S.C. § 2254(d), however, the federal court may only consider a rule that the Supreme Court has clearly established.  The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Indeed, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. (citation omitted); see also Munoz v. Gonzales, 596 F. App'x 588, 589 (9th Cir. 2015) (same).  The Ninth Circuit has also found no clearly established Supreme Court law that:  (1) the admission of prior bad acts evidence to show a propensity to commit the crime violates due process, Flowers v. Foulk, 774 F. App'x 1019, 1022 (9th Cir.), cert. denied, 140 S. Ct. 379 (2019); or (2) the admission of multiple hearsay violates due process, Zapien v. Davis, 849 F.3d 787, 794 (9th Cir. 2015).

There appears to be some disagreement in this circuit about whether, absent a Supreme Court ruling on the specific issue – here, the admission of prior acts evidence, an analysis under the broad fundamentally unfair standard should be conducted separately.  For example, in Garnett v. Adams, 731 F. App'x 636, 638 (9th Cir. 2018), the court held:

////

23

> [The petitioner's] arguments must fail as, under the AEDPA, even if this Court were inclined to find the admission of the fire experimentation evidence so "clearly erroneous" that it rendered the trial "fundamentally unfair," we "may not permit the grant of federal habeas corpus relief" if such an admission is "not forbidden by 'clearly established Federal law.'" Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting § 2254(d)(1)).

See also Zapien, 849 F.3d at 794 (same). The court in Leinweber v. Tilton, 490 F. App'x 54 (9th Cir. 2012), took a different approach. After recognizing the absence of any clearly established Supreme Court law regarding propensity evidence, the court considered whether the petitioner could establish that admission of the evidence rendered the trial fundamentally unfair. 490 F. App'x at 58. In fact, the court in Leinweber specifically noted that "certain evidentiary rulings and particularly the admission of propensity evidence under certain circumstances in a trial may constitute a violation of due process and result in a fundamentally unfair trial." Id.

**B. Legal Standards for Ineffective Assistance of Counsel Claim**

To establish his trial attorney rendered ineffective assistance in violation of his Sixth Amendment rights, petitioner must show counsel acted unreasonably and, if counsel had acted reasonably, there is a reasonable probability the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal. Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954), aff'd, 735 F. App'x 290 (9th Cir. 2018).

////

////

## C. Decision of the State Court

Petitioner raised this claim on appeal. The Court of Appeal held:

### B.

### *Admission of Prior Acts Evidence Against the Same Victim under Evidence Code Section 1101*

#### 1. *General Rule*

As a general rule, character evidence is not admissible to show propensity to prove criminal conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) Subdivision (b) of Evidence Code section 1101, provides an exception to the general rule by providing that "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

"Admission of section 1101, subdivision (b) evidence is addressed to the sound discretion of the trial court. The trial court may exclude or admit this type of evidence pursuant to Evidence Code section 352 which provides: 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' The trial court's determination will not be disturbed on appeal absent a clear showing of an abuse of discretion." (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1609-1610 (*Linkenauger*).)

*Linkenauger* involved a defendant who was convicted of murdering his wife after a marriage "punctuated by [the defendant's] use of physical force on her." (32 Cal.App.4th at p. 1606.) The defendant in that case argued the trial court had erred in admitting evidence of his prior assaults on his wife. (*Ibid.*) The *Linkenauger* court rejected the argument and noted California Supreme Court decisions have held that " 'Evidence tending to establish prior quarrels between a defendant and decedent and the making of threats by the former is properly admitted . . . to show the motive and state of mind of the defendant. . . .' " (*Id.* at p. 1610, quoting *People v. Cartier* (1960) 54 Cal.2d 300, 311, and collecting authority.) The *Linkenauger* court concluded this rule "remains 'good law' after the California Supreme Court opinion in *People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*)" that held varying degrees of similarity are required when evidence of prior misconduct against different victims is offered to show intent, common design or plan, or identity. (*Linkenauger, supra,* at pp. 1606, 1612.)

The *Linkenauger* court affirmed the continuing validity of the rule that "[w]here a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon *the same victim*, when offered on disputed issues, e.g., identity, intent, motive, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a 'distinctive modus operandi' analysis of other factors." (*Id.* at p. 1612, quoting *People v. Zack* (1986) 184 Cal.App.3d 409, 415 (*Zack*), italics added.) In contrast to the general rule of admissibility under Evidence Code section 1101, subdivision (b), that requires a similarity analysis for prior acts evidence against a different victim, "a broader range of evidence may be presented to show motive, intent, and identity *where the prior misconduct and charged offense involves the identical perpetrator and victim." (Linkenauger, supra*, at p. 1613, italics added.)

### 2. *Evidence of Defendant's Prior Assaults on the Same Victim*

In this case, the evidence of defendant's two prior assaults in Louisiana was properly admitted at trial under Evidence Code section 1101, subdivision (b), to show motive [fn 2] and the victim's fear.

 Evidence of the prior assaults was relevant to proving defendant's motive. Both of the prior assaults occurring in Louisiana were committed by the defendant against the same victim. During all three attacks, defendant was acting under the influence of cocaine when he physically assaulted his victim. The primary difference between the attacks was that defendant was thwarted during the Louisiana assaults but was able to continue his assault during the Sacramento attack. Although similarity is not required where the same victim is involved, we note the striking similarity here of defendant getting high on crack cocaine and assaulting the victim added to the probative value of the prior acts evidence. Further, the lapse of time between the Louisiana and Sacramento assaults did not diminish the probative value.

As to the victim's fear, the prior assaults were relevant to show the reasonableness of the victim's fear of defendant when he is using cocaine. Defendant argued the sexual encounter was consensual. The victim's fear was relevant to show a lack of consent.

The prior acts evidence was not unduly prejudicial. The victim's testimony regarding the prior assaults was brief. Moreover, the prior assaults against the victim paled in comparison to defendant's conduct for the charged offenses that involved choking her to unconsciousness, tying her up, threatening "to get her," and raping and sodomizing her over the course of several hours.

In short, the prior acts evidence was admissible under Evidence Code section 1101, subdivision (b).

////

////

26

## C.

### *Prior Acts of Domestic Violence under Evidence Code Section 1109*

Defendant also argues the trial court erred in admitting the evidence because defendant and the victim were not cohabitants within the meaning of Evidence Code section 1109. We do not need to address whether the trial court erred in allowing the prior acts evidence under Evidence Code section 1109 because the admissibility of the prior acts evidence in this case did not depend on Evidence Code section 1109. Instead, the prior acts evidence was admissible under Evidence Code section 1101, subdivision (b), and the trial court did not give the jurors an Evidence Code section 1109 instruction telling them they could consider the evidence to show propensity. The purposes for which the jury was told it could use the evidence was limited to valid Evidence Code section 1101, subdivision (b), purposes. Consequently, even if the trial court had erred in its analysis of admissibility under Evidence Code section 1109, the evidence would have been admissible under section 1101. "[W]e will affirm a judgment correct on any legal basis, even if that basis was not invoked by the trial court." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 269.)

The admissibility of the prior acts evidence under Evidence Code section 1101, subdivision (b), and limited purposes for which the jury was instructed it could use the evidence defeats defendant's contention that he received ineffective assistance of counsel because his trial attorney did not object that Evidence Code section 1109's cohabitant requirement was not met. (*People v. Cudjo* (1993) 6 Cal.4th 585, 616 [no ineffective assistance of counsel for failure to lodge an evidentiary objection to admissible evidence].) And "we also reject defendant's various constitutional claims. The routine and proper application of state evidentiary law does not impinge on a defendant's due process rights." (*People v. Riccardi* (2012) 54 Cal.4th 758, 809, overruled on another point by *People v. Rangel* (2016) 62 Cal.4th 1192.)

> [fn 2] On the issue of motive, "[a] defendant is not entitled to have the jury determine his [or her] guilt or innocence on a false presentation that his [or her] and the victim's relationship was peaceful and friendly. [Citation.]" (*People v. Fruits* (2016) 247 Cal.App.4th 188, 204.)

### D. Analysis of Admission of Evidence of Prior Acts

Petitioner argues the evidence of prior acts was inadmissible under either of the state Evidence Code sections cited at trial. Evidence Code § 1101(a) prohibits the use of character evidence to show propensity to commit the charged crimes. Subdivision (b) provides an exception to this general rule by providing that "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove

some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

Petitioner's argument regarding admissibility under section 1101(b) is solely a matter of state law and, therefore, presents no federal constitutional issue for review in a federal habeas proceeding. Estelle, 502 U.S. at 67.

Evidence Code § 1109 permits the admission of evidence of prior acts of domestic violence. However, the Court of Appeal did not consider the admissibility of the evidence under this section because it found the evidence admissible under section 1101(b). Further, the appellate court noted that the trial court instructed the jurors that they could consider the evidence under section 1101(b). It did not give the jurors an Evidence Code § 1109 instruction. Therefore, any error in the admissibility of the evidence under section 1109 could not have affected the verdict.

With respect to petitioner's due process challenge, as described above, there is no clearly established Supreme Court law that propensity evidence violates the Due Process Clause, Flowers, 774 F. App'x at 1022, or that irrelevant or overtly prejudicial evidence violates due process, Holley, 568 F.3d at 1101. Petitioner does not show otherwise. The cases petitioner cites in support of his due process argument have very little precedential value. The Ninth Circuit decided both cases - Walters v. Maass 45 F.3d 1355, 1357 (9th Cir. 1995) and Colley v. Sumner 784 F.2d 984, 990 (9th Cir. 1986) – prior to the enactment of the AEDPA in 1996. Rather than review petitioner's due process claim de novo as the Ninth Circuit did in those cases, the federal court must now initially consider whether the state court decision was contrary to or an unreasonable application of clearly established Supreme Court law under 28 U.S.C. § 2254(d). The AEDPA standard involves a deference to the state court's opinion not previously required. Accordingly, petitioner's due process challenge should fail because he has not shown the state court's decision was "contrary to or an unreasonable application of clearly established Federal law" under 28 U.S.C. § 2254(d).

Even if petitioner may seek relief by showing the admission of the evidence rendered his trial fundamentally unfair, petitioner's claim should fail. The evidence of two prior acts was limited and both sides made little of them. The victim testified briefly at trial to the two incidents. (See ECF No. 20-3 at 202-222.) When she was cross-examined, the defense attorney merely pointed out that the prior incidents had occurred many years previously and they were nothing like the current charges. (ECF No. 20-3 at 309-310.) In their closing arguments, both sides mentioned the prior incidents just once. The prosecution stated that they showed petitioner does "erratic" things when smoking crack cocaine. (ECF No. 20-4 at 321.). The defense noted that petitioner's "bizarre" behavior in New Orleans occurred "20 years ago or something" and did not appear to "make much of an impression on" the victim. (ECF No. 20-4 at 383.)

The jury's conclusion that the victim was sexually assaulted multiple times had to rest on a determination that the victim was credible. This court finds little, if any, relationship between the victim's credibility and her account of the two minor crimes petitioner committed many years previously. To the extent it corroborated the victim's testimony that petitioner was smoking crack cocaine when committing the crimes at issue, she was not the only person to testify that petitioner had acted badly when taking drugs. Petitioner's wife testified that during both of the incidents in New Orleans, petitioner had been smoking crack cocaine. (ECF No. 20-3 at 501-503.) Admission of the evidence of those two prior incidents did not render petitioner's trial fundamentally unfair. Petitioner's due process claim should fail.

Petitioner's claim that his trial attorney erred by failing to seek an evidentiary hearing on the issue of whether petitioner and the victim were co-habitants for purposes of Evidence Code § 1109 should fail as well. As described above, the state court found alternative grounds under Evidence Code § 1101(b) to admit the evidence. Therefore, there is no reasonable probability that any conduct by petitioner's trial attorney with respect to issues under section 1109 affected the verdict. Because petitioner cannot establish prejudice under Strickland, he should not succeed on his ineffective assistance of counsel claim.

**V. Admission of Testimony re Passive Inhalation of Crack Cocaine**

Petitioner makes two arguments that his due process rights were violated by the admission

of expert testimony that the victim's positive drug test was due to the passive inhalation of crack cocaine smoke. First, petitioner contends the prosecutor failed to lay an adequate foundation to show the passive inhalation studies were sufficiently similar to the circumstances in the case. He adds an argument that his trial attorney was ineffective for failing to object to introduction of the studies on that basis. Second, petitioner challenges the denial of a defense request to show the disparity between the quantity of the drug found in the victim's urine with the amounts found in the urine of the subjects of the second-hand smoke experiment. (See ECF No. 1 at 26, 39; ECF No. 20-5 at 34-45.)

The legal standards for a federal court's consideration of state court evidentiary rulings are set out above. Petitioner presents no clearly established Supreme Court law demonstrating that this sort of expert testimony violates due process as required by 28 U.S.C. § 2254(d). Even if this court may consider a due process argument that these decisions of the state court rendered petitioner's trial fundamentally unfair, as discussed below, petitioner fails to meet that standard.

**A. Decision of the State Court**

Petitioner raised this claim on appeal. The Court of Appeal held:

> ### *Expert Testimony Regarding Passive Inhalation of Cocaine Vapors*
>
> Defendant argues the trial court should have excluded expert witness testimony regarding studies about second-hand inhalation of cocaine vapors. In defendant's view, the prosecution laid an inadequate foundation to show the studies were sufficiently similar to the circumstances of this case. In an included argument that lacks a proper subheading, defendant contends the trial court erred in preventing his trial attorney from cross-examining the expert witness about the level of cocaine metabolite found in the victim's urine sample. We reject the arguments.
>
> ### A.
>
> ### *Expert Witness Testimony Regarding Studies Involving Passive Inhalation of Cocaine Vapors*
>
> Prior to trial, the defense sought to introduce the testimony of criminalist Sarah Porter to show the victim's urine tested positive for the presence of cocaine metabolite. The prosecution objected to the testimony unless the defense could show the victim was actually under the influence of that or any other drug in her system. The trial court indicated it would allow Porter to testify about the presence of cocaine metabolite in the victim's urine sample.

During trial and outside the presence of the jury, the trial court conducted a hearing on the admissibility of Porter's testimony – including her testing of the victim's urine sample and her reliance on studies involving passive inhalation of cocaine. Porter testified about the studies without objection. In response to a question about whether there were additional studies supporting the passive inhalation theory, defense counsel objected on grounds of foundation. The objection was overruled and the trial court allowed Porter to testify in front of the jury. In so ruling, the trial court noted Porter's training, skill, and expertise.

In front of the jury, Porter explained the victim's urine tested positive for the presence of cocaine metabolite. Porter did not express an opinion as to how the victim had come to have cocaine metabolite in her system. Porter testified about studies involving passive inhalation of cocaine vapors through second-hand exposure. Defendant's trial attorney did not make an objection to Porter's testimony regarding second-hand exposure to cocaine vapors.

### B.

### *Porter's Testimony Regarding Passive Inhalation Studies[9]*

To preserve an evidentiary issue for review, a defendant must make a timely objection on the same ground as to be raised on appeal. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.) A close reading of the record shows defendant's trial attorney did not object on the same grounds as he argues. On appeal, defendant argues that "the court abused its discretion when it admitted evidence of the passive inhalation studies and the expert's opinion derived therefrom." Although defense counsel made several objections at trial, none related to these two arguments on appeal.

The first four objections occurred during the hearing outside the presence of the jury during which the prosecutor sought to introduce the testimony of its expert witness, Sarah Porter. The first objection related to the lack of foundation that the prosecutor failed to lay regarding the meaning of the term "passive inhalation." The second objection on grounds of being nonresponsive occurred when Porter began to go astray by exploring "other ways that drugs may be ingested passively." The third objection based on leading and lack of foundation were to the question whether there were "*other studies*" other than the ones described by Porter and "that support the idea that passive inhalation does occur." (Italics added.) The objection was that the question was posed "without foundation as to what they were." The fourth objection again pointed out that the prosecutor

---

[9] The Court of Appeal revised subsection II.B. of its opinion in its denial of petitioner's petition for rehearing. The copy of the Court of Appeal opinion that respondent lodged herein does not include that revision. However, petitioner included it with his petition. ( See ECF No. 1 at 720-722.) The revision of this subsection appears in the Westlaw version of the Court of Appeal opinion. That Westlaw version of this subsection is cited here. See People v. Brown, 2019 WL 2314592 (Cal. Ct. App. May 31, 2019), as modified on denial of rehearing, 2019 WL 2314592, at *6-7 (Cal. Ct. App. June 20, 2019).

asked about studies without identifying to which studies she was referring. In short, none of the objections during the hearing outside the presence of the jury were on the same grounds as argued on appeal.

So too, the objections by defendant's trial attorney when Porter was testifying in front of the jury also did not object to Porter describing the studies or relying on these studies in forming her opinion. Defense counsel raised two relevance objections to questions about ethics and practicality of studying the effects of illicit drugs. Defendant's trial counsel objected to Porter's tangent about legal consumption of alcohol. In response to a question about cocaine absorption in children, defense counsel objected: "There's no foundation that any *child* has ever been tested for passive cocaine smoke." (Italics added.) This case does not involve children.

None of these objections were to the description of the studies upon which the expert relied or that these studies did not adequately support the expert's conclusion. Because defendant's trial attorney did not object on the same grounds as he argues on appeal, the evidentiary issue has not been preserved for review.

## C.

### *Cross-examination Regarding the Results of the Victim's Urine Sample*

Defendant asserts the trial court erred when it "precluded defense counsel from eliciting evidence to show the disparity between the actual quantity of drug found in [the victim's] urine as compared to the trace amounts found in the urine of subjects of the second-hand smoke experiment[s]." We disagree.

During the Evidence Code section 402 hearing, defendant's trial attorney argued he should be allowed to introduce evidence of cocaine metabolites in the victim's system to show she was lying and to show she was under the influence of cocaine. The trial court ruled it would allow Porter to testify about the presence of cocaine metabolite in the victim's urine sample. As to defense counsel's proposed argument the victim was under the influence of cocaine, the trial court asked of the defense:

"Are you planning on having an expert who's going to tie it all together, that if [the victim] tested for cocaine at a certain point in time, like a DUI case, can you kind of extrapolate backwards and say she was, therefore, under the influence of cocaine metabolites at the time of the alleged offense and that it's a reasonable inference for the jury to assume that she had drugs in her system at the time of the offense? Otherwise all you've got is this lab test."

Defense counsel indicated he did not plan to introduce such expert testimony and did not believe it was necessary to do so. The trial court responded: "[Y]ou were going to try to make the argument that because [the victim] had cocaine in her bloodstream at the time of the test, she was, therefore, under the influence at the time of the

incident. [¶] And I don't think a jury can make that conclusion in the absence of expert testimony. Now, if you want to point out the fact that she lied and at least said she didn't have drugs in her system and then the tests come back positive for cocaine, I think that's fair game. But for the other purpose, in the absence of expert testimony, I don't think you can get there."

" 'In determining the admissibility of evidence, the trial court has broad discretion. . . . A trial court's ruling on admissibility implies whatever finding of fact is prerequisite thereto. . . .' (*People v. Williams* (1997) 16 Cal.4th 153, 196 (*Williams*).) 'We review the trial court's conclusions regarding foundational facts for substantial evidence. [Citation.] We review the trial court's ultimate ruling for an abuse of discretion [citations], reversing only if " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " [Citation.]' (*People v. DeHoyos* (2013) 57 Cal.4th 79, 132.)" (*People v. Jackson* (2016) 1 Cal.5th 269, 320-321.)

We do not discern an abuse of discretion by the trial court in disallowing defense counsel to introduce evidence regarding the relative quantities of cocaine metabolites found in scientific study participants and the victim's urine sample. "The probable effect of intoxicants other than alcohol is a topic 'sufficiently beyond [the] common experience' of most jurors that expert testimony is required. (Evid. Code, § 801, subd. (a); *People v. Cox* (1990) 221 Cal.App.3d 980, 989; *see People v. Balderas* (1985) 41 Cal.3d 144, 191-192, superseded on other grounds in Civ. Proc. Code, § 223.)" (*Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359, 374.) The trial court did not err in excluding evidence that lay beyond the common experience of jurors to evaluate.

People v. Brown, 2019 WL 2314592 (Cal. Ct. App. May 31, 2019), as modified on denial of rehearing, 2019 WL 2314592, at *6-7 (Cal. Ct. App. June 20, 2019).

### B. Analysis

#### 1. Foundation for Passive Inhalation Theory

As he does here, petitioner argued on appeal that the trial court erred in admitting the passive inhalation studies and the expert's testimony about them because the prosecutor failed to establish a foundation to show those studies were conducted in circumstances sufficiently similar to the circumstances in the present case. The Court of Appeal found these issues procedurally defaulted because petitioner's trial counsel did not specifically object to the admission of the studies or of the expert's testimony. This court may not consider a claim procedurally defaulted

in state court absent a showing of certain exceptions.[10] See Xiong v. Felker, 681 F.3d 1067, 1075 (9th Cir. 2012) (California's contemporaneous objection rule is a procedural bar to federal review). Even assuming this court may consider the merits of petitioner's foundation argument, petitioner fails to show the evidence rendered his trial fundamentally unfair for a number of reasons.

First, during cross-examination, the expert admitted that there were significant differences between the tests conducted and the circumstances of the present case. The tests were conducted for limited periods of time in sealed rooms. The victim in the present case was subjected to the second-hand smoke in a larger, ventilated room, making it less likely that her drug level would exceed that of the test subjects' if it was due to passive inhalation. The defense argued those points thoroughly in closing argument. He argued that the victim must have ingested crack voluntarily, likely with petitioner, and that fact should affect the jury's consideration of her credibility. (ECF No. 20-4 at 362-369.)

Second, even if the trial court barred the use of the passive inhalation testimony, petitioner makes no credible argument that the result of the trial would have been different. The prosecution had a strong case. The victim told stories in interviews and testimony that were consistent in their general description of the attack she suffered.[11] She had some physical injuries consistent with the attacks she described. (ECF No. 20-3 at 254-255; ECF No. 20-4 at 116-127, 289-291, 303.) There was evidence consistent with the victim's story of how she was bound. (ECF No. 20-3 at 300-301; ECF No. 20-4 at 87.) ATM records and video showed petitioner twice withdrew money from the victim's account as she described. (ECF No. 20-4 at 238-243).

////

---

[10] A federal court will not consider a petitioner's claim forfeited if the petitioner can show cause for the default and prejudice resulting therefrom. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Because this court reaches the merits of petitioner's claim, it need not reach petitioner's argument that he has established cause and prejudice.

[11] Testimony regarding the sex crimes includes that of the victim (ECF No. 20-3 at 224-235, 246-247, 256-258, 318-319) and that of officers who interviewed the victim, Officer Stone (ECF No. 20-4 at 25-36) and Officer Castiglia (ECF No. 20-4 at 232-235, 299-300).

34

Further, petitioner's actions could have been reasonably considered incriminatory. He fled immediately after the sexual assaults. (ECF No. 20-4 at 88.) He telephoned his wife the following day and asked whether the police were looking for him. (ECF No. 20-3 at 492-493.) He told the police multiple stories including that he did not recall what happened, that nothing happened, and, after DNA evidence identified him, the defense at trial was that the sex was consensual. (ECF No. 20-8 at 5-6.) A defense attack on the victim's credibility regarding any cocaine use would have paled in comparison to the significant evidence of petitioner's guilt.

For these reasons, petitioner's allegation that his attorney was ineffective for failing to object to this evidence should fail as well. Petitioner cannot show a reasonable probability the result of the trial would have been different had counsel objected to the foundation for the expert's testimony and introduction of the passive inhalations studies. See Strickland, 466 U.S. at 687.

## 2. Denial of Defense Request to Show Victim's Drug Level

Petitioner challenges the denial of a defense request to show the disparity between the actual quantity of the drug found in the victim's urine with the amounts found in the urine of the subjects of the second-hand smoke experiment.

### a. Factual Background

During the 402 hearing, the defense requested the right to question the expert about the difference between the drug level found in the study participants' urine and the victim's drug level. There was some confusion about whether the defense wanted to show the victim's actual drug level or just the fact that the victim's level exceeded the lab's threshold for determining cocaine was present. After the court held that the defense would not be permitted to make a "quantitative" comparison, meaning a comparison between the victim's actual cocaine level and the levels of the study participants, defense counsel explained that he was not, in fact, seeking to do that. Rather, he explained that he only wanted to show that the victim's level exceeded the lab's threshold and did not intend to attempt to show the victim's actual drug level. With that explanation, the trial court permitted the defense to so question the expert. (ECF No. 20-3 at 409-427.)

At trial, defense counsel did attempt to elicit evidence of the victim's actual drug level. The prosecution objected and the objection was sustained.  (ECF No. 20-4 at 60.)  When defense counsel again asked the question, the court held a sidebar at which the prosecutor pointed out that the issue of the victim's actual drug level had been decided at the 402 hearing.  Defense counsel stated that he had forgotten that ruling and had not intended to violate the court's order.  He then abandoned that line of questioning.  (ECF No. 20-4 at 78-79.)

### b. Analysis

In his appellate briefs, petitioner only briefly touched on this argument and it was based on an incomplete description of the 402 hearing.  Petitioner described the judge's ruling as one denying the defense the right to question the expert about the victim's actual drug level.  (See ECF No. 20-5 at 34.)  Petitioner left out the fact that defense counsel ended up explaining that he was not seeking to do so.  Accordingly, petitioner's argument is baseless because the defense never sought to elicit testimony at trial regarding the victim's actual cocaine level. Further petitioner does not allege his attorney was ineffective for failing to seek to present this information.

## VI.  Denial of <u>Faretta</u> Motions

On appeal, petitioner argued the trial court's denial of his motion to represent himself, made on the day scheduled for sentencing, violated his Sixth Amendment rights under <u>Faretta v. California</u>.  In his petition, petitioner adds arguments that the trial court violated his rights under <u>Faretta</u> when it denied three other motions to represent himself.  In addition, petitioner argues the trial court violated his rights when it denied his motion for a new trial without inquiring into the grounds he raised.  (ECF No. 1 at 20, 35; ECF No. 20-5 at 45-51.)

### A.  Legal Standards

A criminal defendant has a right under the Sixth Amendment to represent himself at trial. <u>Faretta v. California</u>, 422 U.S. 806, 832 (1975).  Once a defendant makes a valid request for self-representation, a court's denial of such a request is a Sixth Amendment violation that "is complete at the time of the court's denial" and that cannot be cured by the defendant's subsequent acquiescence to representation by counsel.  <u>See</u> <u>Tamplin v. Muniz</u>, 894 F.3d 1076, 1085-86 (9th

Cir. 2018).  The right to self-representation, however, is not absolute.  <u>Martinez v. Court of Appeal of California</u>, 528 U.S. 152, 161 (2000).  "A defendant may not invoke the <u>Faretta</u> right if the <u>Faretta</u> demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made."  <u>Sandoval v. Calderon</u>, 241 F.3d 765, 774 (9th Cir. 2000).

### B. Background Facts

On appeal, petitioner raised only the claim regarding the trial court's denial of his right to self-representation on the day scheduled for sentencing.  The background facts for that claim are set out below in this court's recounting of the Court of Appeal's decision on that issue.  In his habeas petition, petitioner contends he was denied the right to represent himself on three other occasions.  In addition, petitioner contends the trial court deprived him of his constitutional rights by denying the motion for a new trial he raised on the day of sentencing.

Below, this court provides a summary of petitioner's motions, the hearings held on those motions, and the trial court's rulings.

### 1. September 2015 Motion

Petitioner filed a pro se <u>Marsden</u> motion on September 13, 2015.  (ECF No. 20-1 at 78.) "A '<u>Marsden</u> motion' is the California procedural mechanism through which a criminal defendant 'seeks to discharge his appointed counsel and substitute another attorney' on the ground that he has received inadequate representation."  <u>Mahrt v. Beard</u>, 849 F.3d 1164, 1168 (9th Cir. 2017) (quoting <u>People v. Barnett</u>, 17 Cal. 4th 1044 (1998)).  While petitioner appears to be arguing that he sought to represent himself by bringing this motion, the record does not support that characterization of his argument.  Rather, the record shows that the motion was limited to petitioner's request to be appointed a new attorney.

Petitioner used a form for his motion  entitled "Notice of Motion and Motion for Substitution of Counsel (Marsden Motion)."  (ECF No. 20-1 at 78.)  During the trial court's hearing on petitioner's motion, he did not mention that he sought to represent himself.  (<u>See</u> ECF No. 568-583.[12])

[12] Petitioner's first three motions to discharge his counsel were held ex parte and the transcripts were sealed.  While it is not clear whether a state court ordered they be made public, petitioner

37

Therefore, this court does not consider petitioner's contention that his <u>Faretta</u> rights were violated by the trial court's decision on the September 2015 motion.

### 2. November 2015 Motion #1

Petitioner made a second request to discharge his counsel in November 2015, during voir dire. (<u>See</u> ECF No. 20-3 at 160.) The court held a hearing on this request as well. While it is identified by the court as a <u>Marsden</u> hearing, petitioner specifically told the court he wished to discharge his attorney and represent himself. The trial judge found petitioner's attorney had been representing petitioner well and denied petitioner's motion. (<u>See</u> ECF No. 1 at 585-608.)

### 3. November 2015 Motion #2

Nine days after the trial court considered and denied petitioner's prior motion, petitioner again sought to discharge his attorney and represent himself. At this point, trial was well underway. (<u>See</u> ECF No. 20-4 at 277.) The court held a hearing. The court denied the motion on the grounds that it was untimely and because she felt petitioner could not adequately represent himself against such serious charges. (<u>See</u> ECF No. 1 at 610-627.)

### 4. <u>Faretta</u> Motion and Motion for a New Trial

During the hearing on petitioner's <u>Faretta</u> motion made on the day set for sentencing, January 4, 2016, petitioner argued that he should be permitted to represent himself to make a motion for a new trial. (<u>See</u> ECF No. 20-4 at 467.) His attorney informed the court that he found no grounds for a new trial motion. After denying petitioner's <u>Faretta</u> motion, as described by the Court of Appeal below, the judge informed petitioner that it would not consider his pro per motion for a new trial because he was represented by counsel. (ECF No. 1 at 634-652.) However, the judge did consider a motion for a new trial petitioner filed with the court after the first hearing set for sentencing and before the second hearing, at which petitioner was sentenced. While initially stating that because petitioner was represented by counsel and the pro se motion was not before her, the judge added that even if she could consider it, she would deny it. (ECF No. 20-4 at 518.)

---

has attached them to his publicly-filed petition and the court considers them here.

### C. Decision of the State Court

#### *Denial of Defendant's Faretta Motion*

Defendant argues the trial court deprived him of his constitutional right to self-representation. We disagree.

### A.

#### *Defendant's Request for Self-representation*

Defendant was convicted on November 23, 2015. On January 4, 2016, the day scheduled for sentencing, defendant indicated to the court that he wanted to personally file a motion for new trial. The trial court reminded defendant he was represented by legal counsel. Defendant's trial attorney stated he did not plan to file a motion for new trial because he had not identified any meritorious issues to argue.

Defendant indicated he wanted to relieve his attorney and represent himself. Defendant proceeded to explain why he believed he had meritorious grounds for a new trial motion. Defendant concluded, "I just don't want him representing me." Defense counsel argued that granting defendant's self-representation motion would be "extremely prejudicial" to defendant because defendant did not understand the legal issues of the case. The trial court noted that "[t]he right to self-representation may be invoked by any defendant competent to stand trial." Nonetheless, the trial court denied the motion as untimely and explained:

"I am going to deny [defendant's] *Faretta* motion. I find that the motion itself is not timely. It is made for the first time at the scheduled date for judgment and sentencing. [¶] As the record previously indicated, this matter has been continued for – or had been pending for six weeks, since the jury reached a verdict, and [defendant] did waive time for purposes of this hearing this morning, so it has been about six weeks."

The trial court further stated, "I will note that [defendant] did also indicate that, on some of his grounds for a new trial, he would like to have additional time and confer with counsel. [¶] So at this point, the Court is going to deny [defendant]'s *Faretta* motion as untimely."

Although the trial court denied the motion for self-representation, the court nonetheless allowed defendant to orally argue his motion for a new trial. The trial court found the motion was not properly before the court, and to the extent it was properly before the court it lacked merit.

### B.

#### *Right to Self-representation*

Criminal defendants have a constitutional right to represent themselves. (*Faretta*, *supra*, 422 U.S. at p. 834.) As the Faretta court

39

explained, "The right to defend is personal. The defendant, and not his [or her] lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his [or her] particular case counsel is to his [or her] advantage. And although he [or she] may conduct his [or her] own defense ultimately to his [or her] own detriment, his [or her] choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' " (*Ibid.*, quoting *Illinois v. Allen* (1970) 397 U.S. 337, 350-351 [25 L.Ed.2d 353].)

Trial courts, however, have discretion to deny untimely motions for self-representation. (*People v. Miller* (2007) 153 Cal.App.4th 1015, 1024.) A motion for self-representation that is made after a guilty verdict is timely only if made "a reasonable time prior to the commencement of the sentencing hearing." (*Ibid.*) In considering a motion for self-representation, the trial court should consider the totality of the circumstances in including the amount of time between the self-representation motion and scheduled sentencing date, readiness of the defendant to proceed, and whether the defendant could have earlier asserted his or her right of self-representation. (*See People v. Lynch* (2010) 50 Cal.4th 693, 726, *overruled on other grounds in People v. McKinnon* (2011) 52 Cal.4th 610, 637.)

## C.

### *Defendant's Motion*

The trial court did not err in denying defendant's motion for self-representation as untimely. Six weeks elapsed after defendant was convicted and before he appeared at sentencing. However, the record does not indicate defendant filed his motion prior to the date scheduled for sentencing. Moreover, defendant articulated no reason why his motion for self-representation could not have been brought on a more timely basis prior to the date of sentencing. Instead, defendant indicated a granting of self-representation would have injected additional delay because he wanted trial transcripts prepared. Based on the circumstances, the trial court was within its discretion to deny self-representation. (*People v. Doolin* (2009) 45 Cal.4th 390, 454–455 [motion for self-representation made on the day of the sentencing hearing was untimely].)

(ECF No. 20-8 at 16-19.)

## D. Analysis of Faretta Claims

### 1. Motion Made at Time of Sentencing

Because a criminal defendant does not have an absolute right to self-representation, most courts require it to be asserted "in a timely manner." See Martinez, 528 U.S. at 161-62.

"Supreme Court precedent regarding the permissible timing of a Faretta request is scarce."

Marshall v. Taylor, 395 F.3d 1058, 1060 (9th Cir. 2005). Faretta "indicates only that a motion for

self-representation made 'weeks before trial' is timely." <u>Stenson v. Lambert</u>, 504 F.3d 873, 884 (9th Cir. 2007) (citing <u>Faretta</u>, 422 U.S. at 835). Thus, courts may determine that a <u>Faretta</u> request is untimely "so long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely." <u>Marshall</u>, 395 F.3d at 1061 (citation omitted).

Here, petitioner requested self-representation on the day scheduled for his sentencing hearing. The California Court of Appeal's determination that petitioner's request was untimely comported with <u>Faretta</u>'s "weeks before trial" standard. <u>See</u> <u>Jackson v. Ylst</u>, 921 F.2d 882, 884, 888 (9th Cir. 1990) (<u>Faretta</u> request was untimely where the defendant requested self-representation for his sentencing proceedings); <u>United States v. Long</u>, 597 F.3d 720, 727 (5th Cir. 2010) (same; citing <u>Wood v. Quarterman</u>, 491 F.3d 196, 202 (5th Cir. 2007)); <u>see also</u> <u>United States v. McKenna</u>, 327 F.3d 830, 844 (9th Cir. 2003) (<u>Faretta</u> request was untimely where the defendant requested self-representation after the case went to the jury).

The California Court of Appeal's rejection of petitioner's claim regarding the denial of his motion made at sentencing was thus not contrary to or an unreasonable application of clearly established law under 28 U.S.C. § 2254(d). By the same token, the state court's refusal to consider petitioner's motion for a new trial was not unreasonable because petitioner was represented by counsel. This is especially true where, as the trial court informed petitioner, he had the right to raise his claims on appeal. Moreover, the trial court did, in fact, consider petitioner's pro se motion. After the first sentencing hearing, petitioner mailed his motion to the court. (ECF No. 20-2 at 17-22.) During the second sentencing hearing on January 8, 2016, the trial judge recognized that petitioner had filed the pro se motion and stated that she would again decline to take any action on it because petitioner was represented by counsel. (ECF No. 20-4 at 509-510, 518.) However later in the hearing, the judge permitted petitioner to argue the motion. (ECF No. 20-4 at 510-516.) The judge then concluded that, even if the motion was properly before her, she would deny it. (ECF No. 20-4 at 518.)

### 2. Motions Made in November 2015

Assuming for purposes of this discussion that petitioner properly raised these claims in his state habeas petitions, then the California Supreme Court's rejection of the claim was a "silent" or

"summary" denial because the court did not explain its reasoning. A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington v. Richter, 562 U.S. 86, 98 (2011). This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir.2013) (quoting Richter, 562 U.S. at 98).

The California Supreme Court could have determined that both motions were untimely and denied petitioner's claim on that basis. A state court's denial of a motion for self-representation as untimely is not an objectively unreasonable application of Faretta where the request was made on the morning of the first day of trial. Marshall, 395 F.3d at 1061. Here, petitioner made his first Faretta request on the third day of voir and the second during the prosecutor's examination of its final witness. Upholding those decisions made during trial was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. See Stenson, 504 F.3d at 879, 884-885 (not an unreasonable application of Faretta to deny request for self-representation as untimely when it was made on the day before voir dire ended and on the verge of jury empanelment). Petitioner's Faretta claims should be denied.

**VII. Rejection of Claims on Procedural Grounds**

Petitioner argues that the state courts violated his due process rights by refusing to consider some of his claims on the merits because they found them procedurally defaulted. (ECF No. 1 at 19, 35.) To the extent petitioner is arguing that the state courts erroneously applied procedural defaults to his claims, that is a matter of state law that is not cognizable in a federal habeas proceeding. See Villafuerte v. Stewart, 111 F.3d 616, 632 n. 7 (9th Cir. 1997) (claim that petitioner was denied due process in his state habeas corpus proceedings is "not addressable in a

section 2254 proceeding" (citing <u>Franzen v. Brinkman</u>, 877 F.2d 26 (9th Cir. 1989).)  The Ninth Circuit decision in <u>Sivak v. Hardison</u>, 658 F.3d 898, 907 (9th Cir. 2011), which petitioner cites, is not to the contrary.  (<u>See</u> ECF No. 27 at 24.)  In <u>Sivak</u>, the Ninth Circuit rejected the state court's application of the state procedural bar because it rested on a factual determination that was flatly contradicted by the record.  658 F.3d at 907.  In this case, by contrast, petitioner objects not to a state's factual determination, but rather appears to argue that the state court improperly applied a state law standard.  (<u>See</u> ECF No. 1 at 19, 35.)  A federal court may, consistent with the principles of comity and federalism embodied in federal habeas law, reject a state court's application of its own rule when that application rests on a factual error.  But absent such error, a federal court may not substitute its own interpretation of a state law for that of a state court, <u>Dixon v. Williams</u>, 750 F.3d 1027, 1033 (9th Cir. 2014), and, as stated above, a state law claim is not cognizable in federal habeas.

To the extent petitioner is arguing that, as a matter of due process, state courts may not rely on procedural rules to refuse to consider claims on their merits, petitioner fails to cite, and this court is unaware of, any federal law that prohibits state courts from imposing procedural rules when considering appeals or post-conviction applications invoked by criminal defendants.  <u>Cf.</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 (1989) (state court is free to impose a procedural bar to its consideration of habeas claims on the merits).  Petitioner's argument regarding the state's rejection of his claims on procedural bases should be denied.

## VIII.  Ineffective Assistance of Appellate Counsel

Petitioner contends his appellate counsel was ineffective for failing to raise claims on appeal.  (ECF No. 1 at 17.)  Petitioner identifies his procedurally defaulted claims as claims 1-5, and 8. (ECF No. 1 at 41.)  Because claim 5 is ineffective assistance of appellate counsel which could not have been raised on appeal, any procedural default of that claim is not attributable to appellate counsel.  It appears then that petitioner is alleging counsel failed to raise the following claims:  (1) there was insufficient evidence at the preliminary hearing to support some claims (claim 1); (2) petitioner was subjected to double jeopardy on the three counts of forcible sodomy (claim 2); (3) ineffective assistance of counsel at the preliminary hearing (claim 3); (4) the

1   prosecution's case at preliminary hearing did not provide sufficient notice of evidence at trial

2   (claim 4); and (5) petitioner was wrongly subjected to consecutive sentences (claim 8).

3          First, this court notes that three of petitioner's claims were, in fact, considered on the

4   merits and, therefore, their denial was not the result of any failure of appellate counsel to raise

5   them.  Claims 1 and 3 regarding the sufficiency of the evidence at the preliminary hearing, were

6   addressed on the merits in the superior court's habeas decision.  (ECF No. 20-12.)  Claim 8 was

7   raised, and considered, on appeal.  (ECF No. 20-8 at 10-21.)  Therefore, the only claims that were

8   not considered on their merits because appellate counsel failed to raise them are claims 2 and 4.

9          The test for an ineffective assistance of counsel claim is whether counsel's conduct was

10  unreasonable and, if it was, whether there is a reasonable probability the result of the proceeding

11  would have been different had counsel acted reasonably.  Strickland v. Washington, 466 U.S.

12  668, 687 (1984).  The Strickland standard is applicable to claims of ineffective assistance of

13  appellate counsel.  Jensen v. Hernandez, 864 F. Supp. 2d 869, 947 (E.D. Cal. 2012) (citing Smith

14  v. Murray, 477 U.S. 527, 535-36 (1986) and Miller v. Keeney, 882 F.2d 1428, 1433 (9th

15  Cir.1989)), clarified on denial of recon., 2012 WL 2571272 (E.D. Cal. July 2, 2012), and aff'd,

16  572 F. App'x 540 (9th Cir. 2014).

17         With respect to the reasonableness of counsel's conduct, the Sixth Amendment does not

18  require appellate counsel to raise every non-frivolous claim suggested by the client.  Jones v.

19  Barnes, 463 U.S. 745 (1983).  Further, even if counsel had raised those claims, petitioner cannot

20  show prejudice because there is no reasonable probability they would have succeeded.  Claims 2

21  and 4 involve the preliminary hearing.  As described above, there is no constitutional basis for

22  claims regarding the preliminary hearing under federal law.  See Blair v. Price, No. 2:16-cv-0132

23  JAM AC, 2020 WL 3574269, at *12 (E.D. Cal. July 1, 2020), rep. and reco. adopted, 2020 WL

24  7240582 (E.D. Cal. Dec. 9, 2020).  Nor is there a basis for those claims under state law, as

25  described by the superior court with respect to other claims regarding the preliminary hearing.

26  Petitioner's claim of ineffective assistance of appellate counsel should be denied.

27  ////

28  ////

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed.  See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  June 21, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB Prisoner Inbox/Habeas/S/brow0991.fr